### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **COLONY INSURANCE COMPANY,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**DALE JACKSON, individually,** )<br>**JAMIE JACKSON, individually,** )<br>**JAMES HUNT, individually,** )<br>**ERNIE JACKSON, individually,** )<br>**J.C. & SONS WASTE** )<br>**MANAGEMENT, INC.,** )<br>)<br>**Defendants.** ) | **Case No. 09-CV-780-TCK-TLW** |

### **OPINION AND ORDER**

Before the Court is Plaintiff Colony Insurance Company's Motion for Summary Judgment (Doc. 20) ("Motion"). Therein, Plaintiff Colony Insurance Company ("Colony") moves the Court for a summary declaratory judgment that its insurance contract with J.C. & Sons Waste Management, Inc. ("J.C.") does not provide coverage for injuries arising out of an accident occurring November 23, 2007 in a truck owned by J.C. Defendants Dale Jackson and Jamie Jackson (the "Jacksons") filed a response in opposition to the Motion ("Response"), but no other Defendants filed response briefs.

**I.      Admissibility of Summary Judgment Exhibits**

Before setting forth the facts, the Court will rule on Colony's objections to certain exhibits attached to the Response. First, Colony objects to the Court's consideration of deposition testimony

of Ernie Jackson ("Ernie")[1] and James Hunt ("Hunt")[2] pursuant to Federal Rule of Civil Procedure 32(a). Rule 32(a) provides:

> a) Using Depositions.
> (1) In General. *At a hearing or trial*, all or part of a deposition may be used against a party on these conditions:
> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
> (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
> (C) the use is allowed by Rule 32(a)(2) through (8).

(emphasis added). Both depositions were conducted in a related state-court proceeding to which Colony is not a party, and the Court accepts Colony's assertion that it was not present at the depositions, did not have representation at the depositions, and did not have notice of the depositions. However, under Tenth Circuit law, Rule 32(a) does not apply to evidence submitted at the summary judgment stage. *See Tingey v. Radionics*, 193 F. App'x 747, 765 (10th Cir. 2006) ("As the case law reveals, [Rule 32(a)] is primarily applied as a limitation on introducing deposition testimony at trial. While a few courts have applied Rule 32(a) to deposition testimony introduced in summary judgment proceedings, in our view this application represents an overly-expansive view of the Rule, given the purpose of the Rule and the mechanics of summary judgment procedure.") (internal citations omitted). Therefore, this objection is overruled.

Second, Colony objects to the Court's consideration of Ernie's affidavit[3] pursuant to Federal Rule of Civil Procedure 56(e)(1), which requires that affidavits be based on personal knowledge,

---

[1] Ernie's deposition testimony is attached as Exhibit D to the Response.

[2] Hunt's deposition testimony is attached as Exhibit F to the Response.

[3] Ernie's affidavit is attached as Exhibit B to the Response.

set out facts that would be admissible in evidence, and "show that the affiant is competent to testify on the matters stated." Ernie's affidavit provides:

> I, Ernie Jackson, owner of JC & Sons Waste Management, declare under penalty of perjury that I hired Dale Jackson to perform independent contract work for JC & Sons Waste Management. Dale Jackson was hired under an independent contractor's agreement for periodic work subject to availability. He worked the hours he chose to work when the company had work availability, he was paid cash and was required to file his own taxes, he provided his own 'equipment' aside from the trash truck, he was not in a hire/fire position but was voluntary contract labor. At the time of Mr. Jackson's motor vehicle accident of November 23, 2007, he was working as an independent contractor, riding in one of our company trucks with another worker.

(Ex. B. to Resp.)

The first four sentences of the affidavit are based on Ernie's personal knowledge and observations. The Court does not construe the last sentence of the affidavit as an impermissible legal conclusion, as argued by Colony. Instead, this is simply Ernie's lay opinion as to the status of Dale Jackson ("Dale") at the time of the accident. While Ernie's opinion is by no means legally controlling, Ernie is "competent" to testify as to his lay opinion on this matter. Therefore, this objection is overruled.

Third, Colony objects to Exhibit E to the Response, which is a document on J.C. letterhead entitled "Employee Confidential Agreement." This document is dated June 13, 2008 and is signed by Hunt and Mary Jackson, as Vice President of J.C. Colony objects to this exhibit as irrelevant, containing hearsay, and containing impermissible opinion testimony but does not explain what in the document constitutes hearsay or impermissible opinion testimony. The Court finds this exhibit relevant and does not, at least at this stage of the proceedings, find anything in the document that is inadmissible hearsay or opinion testimony. Therefore, this objection is also overruled.

3

**II.     Factual Background**

The following facts are either undisputed or are construed in the light most favorable to the Jacksons. Ernie is the owner and President of J.C., which is a waste management company that collects trash from residences in Pawhuska, Oklahoma. Colony issued a Commercial Lines Policy, Policy Number BA3568033 ("Policy"), to J.C., which was effective from June 20, 2007 to June 20, 2008. On November 27, 2007, Dale, Ernie's nephew, was the passenger in a trash truck owned by J.C. that was being driven by Hunt. After completing their trash route, Dale and Hunt were en route to a mechanic who was to perform routine maintenance on the trash truck. While traveling to the mechanic, Hunt lost control of the vehicle, and Dale sustained injuries. Dale made a claim under the Policy for injuries arising out of the November 27, 2007 accident. Colony denied the claim but paid Dale the policy limit for uninsured motorist coverage under the Policy. Colony reserved the right to claim a credit for this amount in the event that liability coverage was deemed available under the Policy.

On November 6, 2009, the Jacksons filed suit in Osage County, Oklahoma against J.C., Ernie, and Hunt, asserting claims for negligence and loss of consortium ("state court action"). The Jacksons originally alleged that Ernie and J.C. were liable for Hunt's negligence under the doctrine of respondeat superior and that Hunt was J.C.'s employee at the time of the accident. The Jacksons have since, however, filed a motion in the state court action to amend their Petition to assert that Hunt was an independent contractor rather than an employee of J.C.[4] On December 11, 2009, Colony filed a Complaint for Declaratory Judgment in this Court, seeking a declaration that no liability coverage is available under the Policy.

---

[4] The Court is not aware of the status of this motion in the state court action.

### III.     Rule 56 Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

### IV.     Analysis

Section II of the Policy, entitled Liability Coverage, provides that Colony will pay all sums that J.C., its insured, "legally must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Policy at II(A), Ex. 1 to Motion.) Section II also contains a list of exclusions. (*Id.* at II(B).)  Colony contends that three separate exclusions apply: (1) the "Workers' Compensation" exclusion ("workers' compensation exclusion"), (*see id.* at II(B)(3)); (2) the "Employee Indemnification and Employer's Liability" exclusion ("employee exclusion") (*see id.* at II(B)(4)); and (3) the "Fellow Employee" exclusion ("fellow employee exclusion") (*see id.* at II(B)(5)). The Court will address each exclusion in determining if Colony is entitled to a summary declaration of non-coverage.

A. <u>Workers' Compensation Exclusion</u>

This provision excludes from coverage "[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation . . . law or any similar law." (*Id.* at II(B)(3).) This type of exclusion, which is a standard "ISO"[5] provision, is intended to be "compatible" with a state's workers' compensation laws and to "prevent the payment of double premiums and the need for unnecessary coverage by insurers." *See Brown v. Ind. Ins. Co.*, 184 S.W.2d 528 (Ky. 2006) (internal quotations omitted) (explaining the nature and purpose of an identical provision in insurance contract). In order to prevail on summary judgment based on this exclusion, J.C. must show that, as a matter of law, J.C. or its insurer[6] "may he held liable" under Oklahoma's workers' compensation laws for Dale's injuries.

The Jacksons contend that Dale was an independent contractor at the time of the accident. Under Oklahoma law, independent contractors are not entitled to workers' compensation benefits.

---

[5] ISO is an abbreviation for Insurance Services Offices, Inc. ISO is a national insurance policy drafting organization that develops standard policy forms and files them with each state's insurance regulators. *See French v. Assurance Co. of Am.*, 448 F.3d 693, 697 & n.1 (4th Cir. 2006).

[6] J.C. did not carry workers' compensation insurance. However, Colony cited authority holding that an insured's failure to carry workers' compensation insurance does not preclude an insurer from denying coverage based on a workers' compensation exclusion. *See, e.g., Brown*, 184 S.W.3d at 534-35 ("Every jurisdiction that has considered this issue has held that a "workers' compensation" exclusion in a policy of commercial automobile or CGL insurance . . . precludes coverage when the insured employer is exposed to tort liability solely because of its failure to procure a policy of workers' compensation insurance."); *Johnson v. Marciniak*, 231 F. Supp. 2d 958, 959-60 (D.N.D. 2002) (explaining that an employer/insured "should not be rewarded for failure to obey workers compensation law" and that the employee's tort action against the employer "was made possible only because of the failure to obtain workers compensation insurance"). The Jacksons did not make any contrary arguments or cite any contrary authority. Therefore, for purposes of this motion, the Court concludes that the workers' compensation exclusion may apply despite J.C.'s failure to carry workers' compensation insurance.

*See Duncan v. Powers Imports*, 884 P.2d 854, 857 (Okla. 1994) (holding that Oklahoma Workers' Compensation Court correctly denied benefits where claimant was an independent contractor rather than an employee); *Fluor Eng'rs & Contractors, Inc. v. Kessler*, 561 P.2d 72, 74 (Okla. 1977) ("The first prerequisite to jurisdiction of the State Industrial Court to award compensation is a showing that claimant was, at the time of his injury, an employee of the respondent."). Therefore, if Dale was an independent contractor, the workers' compensation exclusion does not apply.

For purposes of Oklahoma workers' compensation law, employment is a "mixed notion of contract and status – contract, because it generally results from a consensual inception; status, because at times it may be imposed involuntarily as a legal consequence that attaches by force of law to the parties' conduct." *Brown v. Burkett*, 755 P.2d 650, 651 (Okla. 1988). Therefore, a workers' compensation claimant's status "is to be determined not alone from the written contract but from all the facts and circumstances adduced by the evidence." *Brewer v. Bama Pie, Inc.*, 390 P.2d 500, 502 (Okla. 1964) (finding that driver was employee notwithstanding language in contract designating him as an independent contractor). As a general rule, an independent contractor is "one who engages to perform a certain service for another, according to his own manner, and method, and free from control and direction by his employer in all matters connected with the performance of the service, except as to result or product of the work." *Barfield v. Barfield*, 742 P.2d 1107, 1110 (Okla. 1987). "[T]he decisive test to determine whether one is an independent contractor or [an employee] is to ascertain whether the employer had the right to control, or purported or attempted to control, the manner of the doing of the work, and if he did have that right, or exercised it regardless of his right to do so, the relationship is that of [employer/employee]." *Id.*

The Oklahoma Supreme Court considers eleven factors in determining whether an individual is an employee or an independent contractor, all of which apply in the context of entitlement to workers' compensation benefits. *See Duncan*, 884 P.2d at 856 n.1. These eleven factors are:

> (a) the nature of the contract between the parties, whether written or oral; (b) the degree of control which, by the agreement, the employer may exercise on the details of the work or the independence enjoyed by the contractor or agent; (c) whether or not the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others; (d) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (e) the skill required in the particular occupation; (f) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (g) the length of time for which the person is employed; (h) the method of payment, whether by the time or by the job; (I) whether or not the work is a part of the regular business of the employer; (j) whether or not the parties believe they are creating the relationship of master and servant; and (k) the right of either to terminate the relationship without liability.

*Id.* (citing *Page v. Hardy*, 334 P.2d 782, 784-85 (Okla. 1958)). "Generally, the question of whether an individual serves as an independent contractor or an employee is for the trier of fact." *Price v. Howard*, 236 P.3d 82, 95 (Okla. 2010). "The issue becomes a one of law when no other inference can be drawn from the facts presented other than that the individual serves in the capacity of one or the other." *Id.*; *see also Northland Cas. Co. v. Meeks*, 540 F.3d 869, 872 (8th Cir. 2008) (applying Arkansas law to determine employee/independent contractor status for purposes of insurance coverage) ("Although agency is a question of fact ordinarily determined by the trier of fact, where the facts are undisputed, and only one inference can reasonably be drawn from them, it becomes a question of law.").

Colony submitted the following evidence in support of its contention that Dale was an employee of J.C.: (1) Dale's testimony that he was paid hourly (*see* Ex. 3 to Motion at 18); (2) Dale's testimony that a fellow worker, Bobby, showed him which houses J.C. serviced and he then

8

did the route by memory; (3) Dale's testimony that he would call Ernie to ask if he "needed anything done" when he "wasn't doing carpentry work," and Ernie would tell him to call or meet Hunt at a particular location (*see id.* at 22); (4) Dale's testimony that he always had to check with Ernie to see if work was available (*see id.* at 28); (5) Dale's testimony that he had no written contract with J.C. (*see id.* at 49); (6) Dale's testimony that he performed no other services other than picking up trash, dumping trash, taking it to the dump, and getting rid of it; (7) Dale's testimony that he did not have to do anything to "get ready" for work at J.C., except bring his gloves; and (8) Dale's testimony that he did prior similar work for the City of Pawhuska but was no longer doing such work.[7]

In response, the Jacksons submitted the following testimonial evidence: (1) Ernie's affidavit stating that Dale was hired as an independent contractor to perform periodic work subject to availability, that Dale worked the hours he chose to work, that Dale was paid cash, that Dale filed his own taxes, that Dale provided his own equipment except the trash truck, and that Dale was not in a "hire/fire position but was voluntary contract labor" (*see* Ex. B to Resp.); (2) Dales's testimony that he performed work for J.C. "off and on" from June 2007 through November 2007 (*see* Ex. C to Resp. at 21); (3) Dale's testimony that he also worked as a carpenter during relevant times (*id.* at 13); (3) Dale's testimony that he did not work a "typical shift" but that Ernie would give them an "outline" of the trash route, and they would decide whether they started at 8:00 am or at noon (*id.* at 19-20); (5) Ernie's testimony that Dale was an independent contractor and had a contract to that

---

[7] In its statement of "facts," Colony made the conclusory statement that Jackson was "directed and controlled" by J.C. and then cited to over twelve portions of Dale's testimony. The Court has reviewed all relevant portions of Dale's testimony and endeavored to recite any such portions that indicate direction or control by J.C. This type of conclusion in a "statement of facts" is not helpful to the Court and should be avoided.

9

effect (*see* Ex. D to Resp. at 14); and (6) Hunt's testimony that Hunt was an independent contractor and did "temporary or periodic" work (*see* Ex. F to Resp. at 7).

The Jacksons also submitted an "Employee Confidential Agreement" dated June 13, 2008 between Hunt and J.C.[8] This document is, according to argument in the Jacksons' briefs, indicative of contracts entered with all of J.C.'s workers, including Dale.[9] It provides:

> I, James S. Hunt, Jr., on 13 day of June, 2008, employee, of J-C & Son's Waste Management Inc. I agree not to discuss with any these issue concerning other employees, bring these personnel issues to the main office. Notifying personnel if any decisions made concerning the hours, labor, or jobs that is of interest to this company. Use of cell phone is for work given to you by employer for business not pleasure. If the phone such becomes broken or damaged before your lease is valid we will are not responsible to help with another phone. you pay the difference. It is also your understanding that you work here with this job is contract labor we do not carry insurance you carry your own. Any information released out side this company could result in damages and mean immediate termination of employment. The company employee's to keep any plan or project strictly confidential in this company. What wages or positions are chose for employee is made strictly according to qualifications and time worked for this company. If there is any questions they will be addressed to scheduled company meeting's or made arrangements for discussions with the company personnel privately. All personnel problems outside the company are not to be brought into the company business. Business will be dealt with as business and the employee's personal affairs <u>will not</u> be looked at, as apart of a companies' problem, anything outside the company will be considered <u>personal affairs</u> of the employee's and/or employer's.

(Ex. E to Resp.)

The Court concludes that the employee/independent contractor is a question for the trier of fact because more than one reasonable inference could be drawn from the evidence presented. On one hand, Ernie and Dale both testified that Dale was an independent contractor and that both parties' intent was to form a contractor/contractee relationship. They also testified that, other than

---

[8] Apparently, neither Ernie or Dale could locate the contract allegedly entered by Dale.

[9] The submitted version of this document is difficult to read and contains many incomplete sentences and grammatical errors, but the Court has attempted to quote it accurately.

receiving the initial trash route, Dale did not receive specific instruction from Ernie as to when or in what manner the route must be completed. Dale further testified that he contacts Ernie to see if trash collecting work is available, only when he has time and is not busy with carpentry jobs. On the other hand, trash dumping is certainly not a "skilled" profession. Dale was paid by the hour, Ernie supplied the trash truck, and the work performed by Dale was part of the "regular business" of J.C. Assuming for summary judgment purposes that the agreement between Hunt and J.C. is relevant to Dale's status, the agreement also could arguably support either status. The agreement repeatedly uses the word "employee" and states that Hunt is subject to termination. The agreement also states, however, that Hunt is "contract labor" who must "provide his own insurance." Considering all the evidence, Colony has not demonstrated that "no other inference can be drawn from the facts presented other than that" Dale was an employee of J.C. *See Price*, 236 P.3d at 95 (reversing grant of summary judgment because more than one reasonable inference could be drawn where parties intended independent contractor status but other facts indicated employee status).

Further, the Court finds that the credibility of witnesses – particularly Ernie and Dale – is important to the determination and cannot be assessed at the summary judgment stage. Ernie and Dale have both testified that Dale was an independent contractor and made certain statements consistent therewith. However, Ernie and Dale both have incentive for Dale to be an independent contractor so that Colony will provide coverage. In addition, Ernie and Dale are relatives. Therefore, although portions of their testimony may support independent contractor status, the credibility of such testimony should be weighed by a finder of fact before any status determination is made.

Because different reasonable inferences may be drawn from the record evidence as to whether Dale was an employee or an independent contractor, Colony is not entitled to summary judgment in its favor based on the workers' compensation exclusion.

B.  Employee Exclusion

In relevant part, the Policy contains another exclusion for:

"Bodily injury" to:
a.  An "employee" of the "insured" arising out of and in the course of:
(1) Employment by the "insured"; or
(2) Performing the duties related to the conduct of the "insured's" business . . . .

(Policy at II(B)(4), Ex. 1 to Motion.)  For purposes of this exclusion, the Jacksons argue that Colony is not entitled to summary judgment because different inferences could be drawn as to (1) whether Dale was an "employee" of J.C., and (2) whether Dale's injuries arose "out of and in the course of his employment" by J.C. or "performing the duties related to the conduct" of J.C.'s business.  The Court agrees with the Jacksons that reasonable minds could differ as to whether Dale was an "employee."  The Court does not reach the second argument.

The Court begins with the definition of "employee" contained in the Policy.[10]  The relevant definitions provide:

"Employee" includes a "leased worker."  Employee does not include a "temporary worker."
. . .
"Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker."

. . .

---

[10]  For purposes of the workers' compensation exclusion, the employee/independent contractor analysis turns solely on Oklahoma common law.  For purposes of this exclusion, the employee/independent contractor analysis must begin with the Policy's definitions.

> "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

(*Id.* at VI(F), (I), (R).)  Except for expressly including "leased workers" and expressly excluding "temporary workers," this definition of "employee" provides no guidance.[11]  As other courts have done, the Court turns to state law for determining whether Dale qualifies as an "employee" under the Policy or instead was, as argued by the Jacksons, an independent contractor not subject to the employee exclusion.  *See Northland Cas. Co.*, 540 F.3d at 873-74 (deciding whether coverage applied under identical policy provision and consulting Arkansas common law factors for determining employer/independent contractor status); *St. Paul Reins. Co., Ltd v. Baldwin*, 503 F. Supp. 2d 1255, 1263-64 (D.S.D. 2007) (deciding whether coverage applied under identical policy provision and consulting South Dakota common law factors for determining employer/independent contractor status).[12]

For the reasons explained *supra* Part IV.A, the Court finds that different reasonable inferences may be drawn from the record evidence as to whether Dale was an "employee" as that term is used in the Policy.  Colony is therefore not entitled to summary judgment in its favor based on the employee exclusion.

---

[11] Dale contends that he does not fit the Policy's definition of employee because he was an independent contractor, not because he was a "temporary worker."  Therefore, the Court does not address whether Dale was not an "employee" based on his status as a "temporary worker."

[12] In the *Baldwin* case, the court also decided that the term "employee" was unambiguous.  *See Baldwin*, 503 F. Supp. 2d at 1263.  In this case, neither party has argued that the term is ambiguous, and the only dispute is over Dale's status as an employee or independent contractor.

13

C.  Fellow Employee Exclusion

Finally, Colony argues it is entitled to a declaration of non-coverage based on the fellow employee exclusion, which excludes:

> "Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of [J.C.'s] business.

For the reasons explained *supra* Part IV.A, the Court finds that different reasonable inferences could be drawn from the record evidence as to whether Dale was an "employee" as that term is used in the Policy and therefore whether he was a fellow "employee" of the driver, Hunt. Colony is therefore not entitled to summary judgment in its favor based on the fellow employee exclusion.

**V.  Conclusion**

Plaintiff Colony Insurance Company's Motion for Summary Judgment (Doc. 20) is DENIED. The Jacksons argued in their response brief that any determination of employee/independent contractor status "must be done at the state court level," without citation to authority or any further explanation. If desired, the Jacksons may submit additional briefing on this issue no later than November 12, 2010, and Colony may respond no later than November 19, 2010. No reply will be allowed.

**SO ORDERED this 19th day of October, 2010.**

*/s/ Terence Kern*
**TERENCE KERN**
**United States District Judge**